IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHARON FRIERSON-SIMIYU,            §
                                   §
            Plaintiff,             §
                                   §
V.                                 §    No. 3:16-cv-2847-D-BN
                                   §
NANCY A. BERRYHILL,                §
Acting Commissioner of Social Security, §
                                   §
            Defendant.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Sharon Frierson-Simiyu seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Ms. Frierson-Simiyu alleges that she is disabled due to a variety of ailments including osteoarthritis, hip replacement surgery, chronic low back pain, arthritis in her right knee, neuropathy in her hands and feet, carpal tunnel syndrome and edema. *See* Administrative Record [Dkt. No. 12 ("Tr.") at 85-88. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Ms. Frierson-Simiyu requested a hearing before an administrative law judge ("ALJ"). That hearing was held on March 24, 2015. *See id.* at 78-121. At the time of the hearing, Ms. Frierson-Simiyu was 42 years old. *See id.* at 97. She is a high school graduate and has past work experience as a childcare

attendant and cake decorator. *See id.* at 111. Ms. Frierson-Simiyu has not engaged in substantial gainful activity since November 28, 2012. *See id.* at 64.

The ALJ found that Ms. Frierson-Simiyu was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 72. Although the medical evidence established that Ms. Frierson-Simiyu suffered from osteoarthritis in the bilateral hips, status post hip replacements, residual left hip pain, osteoarthritis in the right knee with pain, lumbar disc disease, cervicalgia, mild bilateral carpal tunnel syndrome with prescribed wrist splint, morbid obesity, and peripheral neuropathy in the feet, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 64-65. The ALJ further determined that Ms. Frierson-Simiyu had the residual functional capacity to perform a limited of sedentary work but could not return to her past relevant employment. *See id.* at 65-66, 71. Relying on a vocational expert's testimony, the ALJ found that Ms. Frierson-Simiyu was capable of working as an order clerk and lens inserter – jobs that exist in significant numbers in the national economy. *See id.* at 71-72. Given her age, education, and exertional capacity for sedentary work, the ALJ determined that Ms. Frierson-Simiyu was not disabled under the Medical-Vocational Guidelines. *See id.* at 72.

Ms. Frierson-Simiyu appealed that decision to the Appeals Council. The Council affirmed.

Ms. Frierson-Simiyu then filed this action in federal district court. Ms. Frierson-Simiyu challenges the hearing decision on two general grounds: (1) the ALJ improperly rejected the opinions of her treating physician and (2) the ALJ improperly evaluated her credibility.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain

whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to

show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ

had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

Among the arguments that Ms. Frierson-Simiyu makes is a single ground that compels remand – the ALJ erred in assigning the opinion of her treating physician, Dr. Aruna Kooney, weight "only where it is consistent with the residual functional capacity" found by the ALJ without conducting the detailed analysis required by Section 404.1527(c).[1]

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez,* 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

---

[1] By recommending remand for further administrative proceedings, the undersigned does not suggest that Ms. Frierson-Simiyu is or should be found disabled.

But "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and when good cause is shown. *Id.* at 455. An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

20 C.F.R. § 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that the opinion is not entitled to 'controlling weight.'" *Id.* at 455-456 (internal quotations omitted). Specifically, the ALJ must consider:

> (1) the physician's length of treatment of the claimant;
>
> (2) the physician's frequency of examination;
>
> (3) the nature and extent of the treatment relationship;
>
> (4) the support of the physician's opinion afforded by the medical evidence of record;
>
> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

*Id.* at 455; 20 C.F.R. § 404.1527(c)(2). But, in decisions construing *Newton v. Apfel*, the United States Court of Appeals for the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not set

forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Dr. Koney provided a Physical Medical Source Statement concerning Ms. Frierson-Simiyu's ability to perform work-related activities. *See* Tr. at 636-42. Dr. Koney found that Ms. Frierson-Simiyu would need work-related limitations including the ability to shift positions at will from sitting, standing, or walking; the ability to walk about for five minutes every sixty minutes; the need for unscheduled breaks of thirty minutes once or twice a week; and limitations to using her hands and arms for handling, fingering, forward reaching, or overhead reaching no more than 25% of the time. Dr. Koney also found that Ms. Frierson-Simiyu could sit for 45 minutes at a time up to six hours in a workday and stand for 30 minutes at a time for up to four hours in a workday. Dr. Koney further found that Ms. Frierson-Simiyu could never lift and carry any weight and could occasionally twist, stoop, crouch, and climb. And Dr. Koney found that Ms. Frierson-Simiyu would be off task 10% of the workday and would be expected to be absent from work three days a month.

The ALJ found that Ms. Frierson-Simiyu has the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and less than ten pounds frequently. The ALJ also found that Ms. Frierson-Simiyu is able to stand and walk for two hours and to sit for eight hours during an eight-hour workday. The ALJ found that Ms. Frierson-Simiyu is able to push and pull and to operate foot controls occasionally. The ALJ found that Ms. Frierson-Simiyu is able to climb stairs occasionally, but can never climb scaffolds, ladders, and ropes and that she is able to occasionally crouch, bend,

crawl, stoop, and balance. The ALJ found that Ms. Frierson-Simiyu cannot be exposed to unprotected heights, moving machinery, uneven terrain, moderate amounts of vibration, commercial driving, open bodies of water, or open flame. The ALJ found that Ms. Frierson-Simiyu is able to perform overhead reaching and reaching in all directions and that she is able to perform bilateral handling and fingering frequently. The ALJ found that Ms. Frierson-Simiyu will require a medically hand-held assistive device for prolonged ambulation and balance. The ALJ also found that Ms. Frierson-Simiyu requires the ability to elevate her legs to at least six inches. *See* Tr. at 65-55.

In making the RFC determination, the ALJ acknowledged Dr. Koney's opinions but gave the treating physician's assessment weight "only where it is consistent with" the RFC found by the ALJ. *Id.* at 66; *see also id.* at 636-43. The ALJ noted several inconsistencies, including Dr. Koney's statements that Ms. Frierson-Simiyu's prognosis was good but that her impairments would be expected to last twelve months and that Ms. Frierson-Simiyu would not have limitations with lifting, handling, and fingering but then finding that Ms. Frierson-Simiyu could use her hands for grasping, turning, and twisting objects, her fingers for fine manipulations, and her arms for reaching in front of her body and overhead only 25% of the time during an eight-hour workday. The ALJ also concluded that there is no indication that Ms. Frierson-Simiyu would need to take more than a normal amount of breaks per day or week or take off three days per month.

The ALJ did not refer to any medical evidence in support of her opinion or to contradict the opinion of the treating physician. Ms. Frierson-Simiyu argues that the

-9-

ALJ was required to consider the Section 404.1527 factors because she provided no reference to any specific examining physician evidence that supports denying "controlling weight" to the treating source opinion. *See Sowards v. Colvin*, No. 3:13-cv-4916-BN, 2014 WL 6388428 (N.D. Tex. Nov. 17, 2014).

The ALJ rejected Dr. Koney's opinion as to limitations in the use of her arms and hands and said nothing about Ms. Frierson-Simiyu's need to sit, stand, or walk at will or her need to walk about for five minutes each hour. The ALJ did not consider this portion of Dr. Koney's opinions, failed to include these limitations in her RFC finding, and failed to question the vocational expert about whether these limitations would impact Ms. Frierson-Simiyu's ability to perform the jobs relied on by the ALJ at Step 5.

The ALJ gave substantial weight to the opinions of the State agency medical consultants, who found that Ms. Frierson-Simiyu could perform sedentary work with occasional non-exertional limitations. *See id.* at 67; *see also id.* at 124-41, 144-63. The ALJ added the limitation that Ms. Frierson-Simiyu would need to elevate her legs six inches and noted that Ms. Frierson-Simiyu has limitations in reaching, handling, and fingering.

But the consultative consultants' reports do not constitute a "competing medical opinion" that would excuse the ALJ from conducting the detailed analysis that Section 404.1527(c) requires because they did not examine Ms. Frierson-Simiyu. *See Qualls v. Astrue*, 339 F. App'x at 466-67; *see also Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017) ("Dr. Bernauer's opinion meets [the] definition [of a medical opinion] as he

examined Kneeland, noted observations from that examination, and opined on her work limitation").

Accordingly, the ALJ was required to conduct the detailed analysis Section 404.1527(c) requires before rejecting Dr. Koney's findings, and, "[w]hile the ALJ was not required to mechanically list each Section 1527 factor, it is not at all clear from his discussion that each factor was applied, discussed, or considered." *Coljohn v. Berryhill*, No. 3:16-CV-1208-K-BK, 2017 WL 2455962, at *7 (N.D. Tex. May 16, 2017), *rec. adopted*, 2017 WL 2462648 (N.D. Tex. June 6, 2017).

"[F]ailure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But a failure does not necessarily dictate a remand for further review. The Court will affirm a decision if the ALJ's error is harmless and remand if the plaintiff was not prejudiced due to the error. *See id.* A plaintiff establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question. *Newton*, 209 F.3d at 458.

Here, the ALJ failed to properly consider Dr. Koney's opinions, which found disabling work-related limitations. As a result, the error is not harmless because, if the ALJ had given more weight to Dr. Koney's opinions, there is a realistic possibility that she may have found Ms. Frierson-Simiyu disabled. *See Coljohn*, 2017 WL 2455962, at *8.

**Recommendation**

The hearing decision should be reversed and this case remanded ed to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 8, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE